UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

Civil Action No. 3:24-cv-398-RGJ

| | |
|---|---|
| ALAN J. JONES | Plaintiff and Counter-Defendant |
| v. | |
| ASSUREDPARTNERS NL, LLC and<br>ASSUREDPARTNERS CAPITAL, INC. | Defendant, Counter-Plaintiff<br>and Third-Party Plaintiffs |
| v. | |
| ALLIANT INSURANCE SERVICES, INC.,<br>MITCHELL ADAMIC and DESIREE BREWER | Third-Party Defendants |

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

All parties to appear in this action[1] have jointly tendered a Consent Motion for Entry of Preliminary Injunction [DE 85]. The motion was discussed at a previously scheduled hearing [DE 58; DE 86]. Pursuant to the Court's instructions [DE 87], the parties have tendered a Joint Brief [DE 90] further outlining their justifications and agreeing to a finding of facts for purposes for entry of their proposed Preliminary Injunction Order [DE 85-1; DE 90-1]. For the reasons below, the Court will **GRANT** the parties' motion and separately enter the preliminary injunction.

**I. Background**

Jones, Adamic, and Brewer are insurance executives who left AssuredPartners for Alliant, leading to this litigation [DE 1-2; DE 4]. AssuredPartners has sought provisional injunctive relief

---

[1] They are Alan J. Jones ("Jones"), plaintiff/counter-defendant; AssuredPartners NL, LLC and AssuredPartners Capital, Inc. (together "AssuredPartners"), defendant/counter-plaintiff and third-party plaintiff, respectively; and Alliant Insurance Services, Inc. ("Alliant"), Mitchell Adamic and Desiree Brewer, third-party defendants. Counsel for material witness Josh Tucker ("Tucker") has appeared as well.

[DE 6] protecting its interests in confidential information, clients and employees. AssuredPartners further supplemented its motion for provisional injunctive relief on several occasions with additional affidavits [DE 11; DE 12; DE 13; DE 17; DE 18; DE 19; DE 20; DE 22; DE 24]. Alliant and the named individual parties responded [DE 21].

After conducting a hearing, the Court granted AssuredPartners' motion in part by entering a Temporary Restraining Order ("TRO") and ordering expedited discovery [DE 30]. Later, that TRO was modified [DE 43] to avoid unnecessary constraints on nonparty insurance clients. The parties then consented to extending the modified order [DE 51] until AssuredPartners' outstanding request for a preliminary injunction [DE 6] could be resolved. Additional supplements [DE 73] and a Motion for Sanctions for Spoliation of Evidence [DE 77] were filed as a result of the parties expedited discovery and third-party subpoenas. Specifically, these supplements include communications between Jones and Restricted Clients as admitted within Jones' Supplemental Interrogatory Answers [DE 73, Ex. 1], statements from a Restricted Client regarding Tucker's solicitation of the client's business [DE 73, Ex. 4], and call log excerpts tending to show that Jones engaged in calls with Restricted Clients leading up to his departure from AP before or after talking to Tucker and Brittany Evans ("Evans") [DE 73, Ex. 2-3].

One day before this case's preliminary injunction hearing [DE 58], the parties submitted a Consent Motion for Entry of Preliminary Injunction [DE 85]. Neither their motion nor their proposed order set forth reasons for entering an injunction. *See* Fed. R. Civ. P. 65(d). The hearing proceeded as scheduled [DE 86]. In light of the Court's questions and concerns there [DE 87], the parties have submitted a Joint Brief [DE 90] further outlining the justifications and agreed upon facts for entry of their agreed injunction [DE 85-1; DE 90-1].

## II. Standard

"The preliminary injunction is an extraordinary remedy . . . to be applied only in the limited

circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (cleaned up). Generally, four factors must be balanced: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012).

When seemingly adverse parties "consent" to injunctive relief, more care must be taken. *See Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986) ("[A] federal court is more than 'a recorder of contracts' from whom parties can purchase injunctions."). The "district court must determine, among other things, that the agreement is 'fair, adequate, and reasonable, as well as consistent with the public interest.'" *Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 872 (6th Cir. 2015) (quoting *United States v. Lexington–Fayette Urban Cnty. Gov't,* 591 F.3d 484, 489 (6th Cir. 2010)). "Moreover, the court must allow anyone affected by the decree to 'present evidence and have its objections heard.'" *Id.* (quoting *Tenn. Ass'n of Health Maint. Orgs. v. Grier,* 262 F.3d 559, 566–67 (6th Cir. 2001)); *see also Bass v. Fed. Sav. & Loan Ins. Corp.*, 698 F.2d 328 (7th Cir. 1983).

In all instances, an injunction order must "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). However, the order may incorporate other judicial determinations by reference and need not delineate findings for each factor listed above. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400–01 (6th Cir. 1997).

### III. Discussion

The Court's findings and conclusions at the TRO stage [DE 30; DE 43], particularly regarding the first two preliminary injunction factors, remain in place and are incorporated here.

*See Six Clinics Holding Corp., II.*, 119 F.3d at 400–01. In addition, the parties have agreed that

> [f]or purposes of the consent preliminary injunction order only, Third-Party Defendants do not oppose APs' characterization of the facts set forth in its Eighth Supplement to the Motion for Temporary Restraining Order and Preliminary Injunction [DE 73], and that, taken as findings of fact, they pose at a minimum "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.'"

*See* DE 90 at 1489(*quoting Gaston Drugs, Inc.,* 823 F.2d at 988 n.2 (6th Cir. 1987) and *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir. 1982)) (internal quotations omitted))].

But in light of the parties' apparent agreement over terms, the third and fourth preliminary injunction factors now demand closer attention. *See. Loc. No. 93*, 478 U.S. at 525. Pursuant to the Court's instructions [DE 87 at 1470–71], the parties have briefed their position on those factors more thoroughly.

**Risk of Substantial Harm to Others—**The parties note that two nonparty Alliant employees—including Tucker, whose counsel has appeared in this case—"are informed of these proceedings, pleadings, and other papers in this action . . . and have had an opportunity to consult with counsel about the consent order of preliminary injunction, its impacts on them as third parties, and the potential to object." [DE 90 at 1490–91].

As for insurance clients who will be impacted, the parties represent that Alliant will "inform the affected businesses . . . in writing of the terms of the consent preliminary injunction order, and provide them with a full copy of the order, within fifteen days of its entry, affording them each 60 days to acquire another insurance broker of their choice, unless the Parties come to an agreement whereby Alliant is permitted to remain as the Restricted Clients' broker of record." [*Id.* at 1491]. AssuredPartners similarly "may communicate with Restricted Clients regarding the terms of the consent preliminary injunction order and its desire for the Restricted Clients to move

4

their insurance business back to [AssuredPartners] as the broker." [*Id.*]

Most critically, clients will be informed of the preliminary injunction and able to maintain an insurance relationship. [*Id.* at 1491–92]. The Court is satisfied that entering the parties' proposed order will not unduly risk substantial harm to nonparties. *See Bays*, 668 F.3d at 818–19; *accord. Bass*, 698 F.2d at 330.

**Service of the Public Interest—**The parties "attest" that they "negotiated in good faith" over their consent motion and filed it "with the valid consent of all parties." [DE 90 at 1490]. They also argue that entry of their proposed order would head off a "protracted legal battle" over injunctive relief. [*Id.*]. The Court is satisfied that entering the parties' proposed order would not be a detriment to the public interest. *See Bays*, 668 F.3d at 818–19; *accord. Lexington–Fayette Urban Cnty. Gov't.,* 591 F.3d at 489.

Based on the facts before the Court and agreed by the parties, the agreed preliminary injunction is "fair, adequate, and reasonable, as well as consistent with the public interest." *Lexington–Fayette Urban Cnty. Gov't.,* 591 F.3d at 489.

### IV. Conclusion

For the foregoing reasons, as well as those outlined in the Court's TRO as modified [DE 30; DE 43], the parties' Consent Motion for Entry of Preliminary Injunction [DE 85] is **GRANTED**.[2] The Court will separately enter their tendered Preliminary Injunction Order [DE 85-1; DE 90-1]. AssuredPartners' former request for a preliminary injunction [DE 6] is **DENIED AS MOOT**.

---

[2] On September 11, 2024, counsel for AssuredPartners phoned chambers essentially to ask when the parties' consent motion would be ruled upon. The parties **shall not** contact the Court, especially ex parte, for that purpose.

5

Rebecca Grady Jennings, District Judge
United States District Court

September 13, 2024

6