UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00398-RGJ-CHL

**ALAN J. JONES,**                                                                                              **Plaintiff,**

**v.**

**ASSUREDPARTNERS NL, LLC,**                                                  **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Compel filed by Defendant/Counter-Plaintiff/Third-Party Plaintiff AssuredPartners NL, LLC and Third-Party Plaintiff AssuredPartners Capital, Inc. (collectively "AP"). (DN 110.) Plaintiff/Counter-Defendant Alan J. Jones ("Jones") and Third-Party Defendants Alliant Insurance Services, Inc. ("Alliant"); Desiree Brewer ("Brewer"); and Mitchell Adamic ("Adamic") filed a joint response in opposition, and AP filed a reply.[1] (DNs 111, 114.) Therefore, this matter is ripe for review.

**I.      BACKGROUND**

      **A.      Factual and Procedural Background**

Jones initially filed this action against his former employer AP seeking a declaratory judgment about the enforceability of certain restrictive covenants ("RCA" or "RCAs") in the employment contract between Jones and AP. (DN 1-2.) AP filed an answer, counterclaim, and third-party complaint against Jones, his new employer Alliant, and two other former AP employees who worked with Jones and are now employed by Alliant, Adamic and Brewer. (DN 4.) AP alleged its former employees breached their employment agreements and their duties of loyalty to AP and asserted claims of tortious interference against Alliant. (*Id.*) AP later amended its

---

[1] The Court will refer to Alliant, Jones, Brewer, and Adamic collectively as the "Alliant Parties."

counterclaim and third-party complaint to add claims against Alliant employees Joshua Tucker ("Tucker") and Brittany Evans ("Evans"). (DN 116.) AP's second motion to amend to add additional claims and parties is currently pending before the Court. (DN 135.)

As is relevant to the instant dispute, the Parties engaged in expedited discovery to prepare for a hearing on AP's Motion for Temporary Restraining Order and Preliminary Injunction. (DN 6.) The Parties agreed to complete expedited discovery by August 6, 2024. (DN 46.) As part of their discovery proposal, the Parties attached certain discovery requests to be answered on an expedited basis, which included the requests propounded by AP that are at issue in the instant motion. (DN 46-1, at PageID # 1030-33.) Specifically, AP's tendered discovery, served on July 17, 2024, included the following requests, among others, under the heading "Documents to be Produced":

1) **Communications[2] between and among Counterclaim Defendants[3] since December 1, 2023.** This includes, but is not limited to, communications regarding the following:
   a) the Individual Counterclaim Defendants' resignation(s) from AssuredPartners or discussions about employment with Alliant;
   b) the Individual Counterclaim Defendants' restrictive covenants with, or postemployment obligations to, Assured Partners;
   c) the terms of the Individual Counterclaim Defendants' employment with Alliant, including any agreements, offer letters, applications, or drafts thereof, as well as any communications or notes regarding the interview or hiring process;

---

[2] AP's request stated as follows regarding the definition of the terms "communication" or "communicate":
   The terms "communication" and "communicate" include, without limitation, all communications by document and oral, telephonic, electronic, and recorded communication, Teams messages, Slack messages, Zoom messages, as well as any documents evidencing that communications occurred, such as calendar entries, audio or phone logs, audio or video conference invitations, Zoom/Microsoft Teams audio and video logs of calls/conferences. This also includes, but is not limited to, letters, emails, text messages, instant messages, social media posting or messages, and any form of electronic communication.
(DN 46-1, at PageID # 1031 n.2.)

[3] AP's requests stated that "Jones, Brewer, and Adamic are collectively referred to as the 'Individual Counterclaim Defendants' " and "Alliant and Individual Counterclaim Defendants are [ ] collectively referred to as the 'Counterclaim Defendants.' " (DN 46-1, at PageID # 1030-31.) AP's requests also clarified that "Counterclaim Defendants includes anyone acting at their direction or on their behalf, such as their attorneys, employees and agents, including third party recruiters." (*Id.* at 1031 n.1.) Tucker and Evans were not yet parties of record at the time the discovery was initially served.

2

    d)     representations relating to any employees that any of the Individual Counterclaim Defendants could potentially bring from AssuredPartners to Alliant or that the Individual Counterclaim Defendants identified as candidates for employment with Alliant;

    e)     any representations regarding the amount/kind/identity of business the Individual Counterclaim Defendants could move from AssuredPartners to Alliant;

    f)     any Restricted Client;[4] and

    g)     the employees at Alliant who would solicit or service Restricted Clients.

**2) Communications between any of the Counterclaim Defendants and any Restricted Clients from December 1, 2023 to the present.** This includes, but is not limited to, the following:

    a)     Communications about changing the Restricted Client's agent from AssuredPartners to Alliant;

    b)     Communications about individuals from AssuredPartners becoming or seeking to become employed by Alliant;

    c)     Communications copying or referencing any of the Individual Counterclaim Defendants;

    d)     Communications about the individuals who would service the Restricted Client's business at Alliant;

    e)     Communications about the Individual Counterclaim Defendants' RCAs;

    f)     Communications about this Lawsuit, the TRO, or obtaining any statements or declarations;

    g)     Communications regarding execution of any Broker of Record letters, including copies of said Broker of Record letters;

    h)     Communications involving any of the Counterclaim Defendants attorneys, or thirdparty [sic] recruiters; and

    i)     Communications involving Josh Tucker and/or Brittany Evans.

---

[4] A "Restricted Client" is defined by the Court's TRO to be "a. [a]ny client of AP during the Two (2) Years immediately preceding the date upon which Individual Counterclaim Defendants' employment with AP ended—July 1, 2024 as to Jones and Adamic and July 8, 2024 as to Brewer—as to which any of Individual Counterclaim Defendants received commission compensation and/or fees; b. [a]ny client of AP during the Two (2) Years immediately preceding the date upon which Individual Counterclaim Defendants' employment with AP ended, as to which the Individual Counterclaim Defendants either had some involvement in proposing, selling, quoting, placing, providing, servicing, or renewing any insurance product or service or about whom the Individual Counterclaim Defendants received Confidential Information; or c. [a]ny prospective client of AP during the Two (2) Years immediately preceding the date upon which Individual Counterclaim Defendants' employment with AP ended, as to which the Individual Counterclaim Defendants had involvement in proposing, selling, quoting, placing, providing, servicing, or renewing any insurance product or service or about whom the Individual Counterclaim Defendants received Confidential Information." (DN 30.) "Confidential Information" is likewise defined by the Court's TRO to mean "AP's proprietary and/or non-public information, whether or not in a written or recorded form, concerned the business or affairs of AP." (*Id.*)

    **3)**    **Communications between any of the Individual Counterclaim Defendants and Josh Tucker and/or Brittany Stevens from December 1, 2023 to the present.**

    **4)**    **Communications between or among Alliant, Josh Tucker, and/or Brittany Stevens regarding the following:**
        a)    any of the Individual Counterclaim Defendants,
        b)    Tucker or the Individual Counterclaim Defendants' resignation(s) from AssuredPartners, and their post-employment obligations to AssuredPartners,
        c)    the terms of the Tucker's and/or Stevens' employment with Alliant;
        d)    any Restricted Client;
        e)    any carriers servicing Restricted Clients

    **5)**    **Communications between Alliant and any carriers relating to any Restricted Client and/or Individual Counterclaim Defendants.**

(DN 46-1, at PageID # 1031-32; DN 110, at PageID # 1711-1712.)

The Alliant Parties served initial responses to those requests on July 22, 2024. (DNs 110-1, 111-1.) Their responses largely overlapped. They objected to all five requests on the grounds that the same were overly broad, unduly burdensome, not proportional to the needs of the case, not relevant to any party's claims or defense and outside the scope of expedited discovery. They objected to Request Nos. 1-3 on grounds that the request sought all communications regardless of subject matter and objected to Request Nos. 4-5 on grounds that they contained no temporal limitation. They objected to Request Nos. 1-3 on grounds that those requests invaded the privacy of Jones, Adamic, Brewer, and third parties because the communications at issue "may contain private family, medical, or financial or otherwise private communications that are not relevant to the claims and defenses at issue in this litigation." (DN 110-1, at PageID # 1733, 1747.) Jones, Brewer, and Adamic objected to each request to the extent that it sought documents not in their possession, custody, or control. Alliant also asserted a number of individual objections related to requests as to communications with the Restricted Clients. But as to each request, the Alliant Parties did agree to produce some documents. For Request Nos. 1-2, they agreed to produce any

4

non-privileged communications responsive to the discrete subparts set forth in the requests. For Request No. 3, they agreed to produce "non-privileged communications between any of the Individual Defendants and Josh Tucker and/or Brittany Evans from December 1, 2023 to the present relating to any Restricted Clients or the Individual Defendants' resignations from AP and/or hiring by Alliant." (*Id.* at 1735, 1749.) For Request No. 4, they agreed to produce

> non-privileged communications dated from December 1, 2023 between or among Alliant, Josh Tucker, and/or Brittany Evans regarding any of the Individual Defendants, the Individual Defendants' resignation(s) from AP, the Individual Defendants' post-employment obligations to AP, any Restricted Client (except for post-BOR communications that do not involve or reference the Individual Defendants), and any carriers servicing Restricted Clients (except for post-BOR communications that do not involve or reference the Individual Defendants).[5]

(*Id.* at 1736-37, 1750.) For Request No. 5, they agreed to produce "non-privileged communications dated from December 1, 2023 to present between Alliant and any carriers relating to any Restricted Clients (except for post-BOR communications that do not involve or reference the Individual Defendants) or the Individual Defendants." (*Id.* at 1737-38, 1751.) Along with their initial responses, the Alliant Parties produced 40,824 pages of documents. (DN 111, at PageID # 1793.)

Subsequent to those initial responses, the Parties engaged in a series of meet-and-confer conversations via both letter and e-mail about the responses and deficiencies AP perceived in the same. While a point-by-point recitation of these discussions is unnecessary to resolving the instant motion, the Court notes that as part of the Parties' discussions, the Alliant Parties stood by their objection that AP's Request Nos. 1-5 improperly requested all communications and that subject matter limitations were necessary. (DN 110-3; DN 110-5; DN 110-6; DN 111, at PageID # 1785; DN 111-2; DN 111-3; DN 111-4; DN 111-6; DN 111-9; DN 114-3.)

---

[5] "BOR" stands for broker of record.

After the Court resolved the injunction motion (DN 6) based on the Parties' proposed consent motion for preliminary injunction (DNs 85, 92), the Court entered a scheduling order setting the Parties a discovery deadline of January 24, 2025 (DN 95). Thereafter, AP served additional requests for production of documents on Alliant to which Alliant responded. (DNs 111-7, 111-8.)

On October 21, 2024, the Court held a telephonic status conference to discuss a discovery dispute regarding the responses detailed herein by the Alliant Parties. (DN 109.) Based on the discussion during the call, the Court granted AP leave to file a discovery motion. (*Id.*) The instant motion to compel followed. (DN 110.)

### B.  The Instant Motion

In its motion to compel, AP argued that the Alliant Parties should be compelled to produce two categories of documents that cover the items requested in Request Nos. 1-5: (1) "all communications between or among any combination of Jones, Adamic, Brewer, Tucker, or Evans since January 1, 2024" and (2) "all communications with Restricted Clients since January 1, 2024, subject to appropriate confidentiality designations." (DN 110, at PageID # 1725.) AP argued that the Alliant Parties were clearly withholding documents and that neither the Court nor AP could trust them to make full and complete productions given Alliant's conduct in a separate case between it and AP and Jones's conduct in this case as detailed more fully in AP's motion regarding spoliation. (*Id.* at 1715-21, 1723-24.) Specifically, AP noted that it knew from phone logs that text messages between the individuals themselves had not been produced. (*Id.* at 1713.) It argued that it was entitled to see all the communications it requested during the relevant period "to determine the full scope of the unlawful scheme, Individual Counterclaim Defendants' breaches of their agreements with AP, their tortious interference with AP's Restricted Clients and Tucker's

6

and Evans'[s] involvement therewith, and the extent of the damages that were proximately caused by Counterclaim Defendants." (*Id.* at 1722.)

In response, the Alliant Parties argued that AP was overreaching and on a fishing expedition. They stressed the "staggering amount of discovery for this type of case" that AP had already received, including production by them of over 40,000 pages of documents along with initial discovery responses, responses to thirty-six third party subpoenas, forensic examination of two cell phones, and leave to take fifteen depositions. (DN 111, at PageID # 1782-83.) They also noted that in responding to AP's second set of discovery, Alliant was going to produce an additional 25,000 documents consisting of communications with the Restricted Clients such that AP's motion should be moot as to that portion of AP's request. (*Id.* at 1783, 1789-90.) They argued that AP was merely speculating that there are additional relevant documents out there and emphasized that AP's request for all communications without subject matter limitations was "unfounded and improperly overbroad, unduly burdensome and disproportionate to the needs of the case." (*Id.* at 1783.) They argued that AP had not sustained its burden to establish the relevance of all communications and that they had produced everything they felt was relevant. Though their response to AP's motion, like their responses to the discovery, made clear that they were withholding some communications, including "purely personal communications." (*Id.* at 1789 n.4.)

In its reply, AP agreed that given Alliant's recent production of communications with the Restricted Clients, that part of its motion was moot for now. (DN 114, at PageID # 1916.) But it maintained its request for the communications between Jones, Adamic, Brewer, Tucker, and Evans. It emphasized that those individuals were "not family members engaged in private conversations, they [we]re co-workers who, together, hatched an unlawful scheme to violate their

7

RCAs, steal AP's business, and then used Alliant strawmen to service AP's Restricted Clients at Alliant on their behalf." (*Id.* at 1908.) It argued that Alliant had only produced communications sent or received from Alliant e-mail addresses with limited exceptions and that based on what it had received from third parties, it had created a list of communications between those individuals that it had not received that the Alliant Parties refused to produce even after review of the list. (*Id.* at 1910; DN 114-2.) It argued that the Alliant Parties had not sufficiently demonstrated that production would be an undue burden and that it suspected there would be at most "a few hundred text messages and emails between or among these custodians, which pales in comparison to what AP has already produced in this case." (*Id.* at 1911.) It again emphasized what it perceived as misconduct by Jones since the start of the case, providing an affidavit regarding the forensic examination completed of Jones's phone that asserted that Jones mass deleted text messages occurring before July 11, 2024, and that he continued to delete things between July 11, 2024, and October 16, 2024, while this case was pending. (DN 114-1.) AP maintained that this was not a case where AP was speculating that additional documents might exist. Instead, it asserted, this is a case where given the demonstrated misconduct of at least one of the Parties, it was entitled to view all communications and not just those selected by its opposition.

## II.     DISCUSSION

### A.     Legal Standard

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the

federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Marsico v. Sears Holding Corp.*, 370 F. App'x 658, 664 (6th Cir. 2010) (quoting *Oppenheimer*, 437 U.S. at 351). The scope of discovery is not without limits, however. In assessing whether information is within the scope of discovery, the Court is directed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosure or discovery when "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). Under Rule 37, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). When an objection to relevance is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action. *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008). If that party demonstrates relevancy, the burden shifts to the party resisting discovery to demonstrate why the information or documents are not discoverable under the Federal Rules. *Id.*; *see also Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (citing *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211-212 (D. Kan. 2002)) ("When the discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or

9

is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure.").

**B.     Analysis**

Given AP's concession that its request with regard to communications with the Restricted Clients was mooted by Alliant's recent production, that part of the motion will be deemed withdrawn and the Court will only address AP's request for "all communications between or among any combination of Jones, Adamic, Brewer, Tucker, or Evans since January 1, 2024." (DN 110, at PageID # 1725.)  The Alliant Parties have challenged both the relevance and the proportionality of AP's request.[6]

As to relevance, given AP's claims in this matter and theory of its case, its request for communications between Jones, Adamic, Brewer, Tucker, and/or Evans does seek relevant information.  What those individuals talked about in preparation for and after their departure from AP to Alliant is relevant to issues relating to breach of any restrictive covenants, tortious interference, or trade secret misuse.  But the Alliant Parties argued that AP's request was overbroad and sought irrelevant information because it asked for all communications between the specified individuals regardless of subject matter, which they equated to an improper fishing expedition by AP.  However, "[m]uch of discovery is a fishing expedition of sorts, but the Federal Rules of Civil Procedure allow the Courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water." *Myers v. Prudential Ins. Co. of Am.*, 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008).  The Court finds this objection—and really all of the Alliant Parties' objections—to be more a question of proportionality than to be one of relevance.

---

[6] While as noted above, the Alliant Parties made numerous objections to the requests at issue in their discovery responses, in their response to the motion to compel, they focused their objections on overbreadth, relevance, undue burden and proportionality. (DN 111.)  The Court will address these objections herein but not the other objections from the discovery responses that were not raised in response to AP's motion to compel.

Rule 26 permits a party to seek only discovery that is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In assessing whether a discovery request is proportional, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

As to the importance of the issues at stake and the importance of discovery in resolving the issues, the communications at issue are one of the central pieces of discovery in this case. AP's theory is that Jones, Brewer, Adamic, Tucker, and Evans conspired and cooperated to steal clients from AP in violation of the RCAs of some of those individuals. To the extent communications between those individuals substantiate that allegation, the discovery sought is critical to AP's claims. These factors weigh in favor of a finding that the discovery sought is proportional to the needs of the case.

As to the amount in controversy, AP has alleged that it lost over $5 million in annual revenue as a result of the unlawful scheme. (DN 110, at PageID # 1708.) Thus, the amount in controversy in this matter is quite high, weighing in favor of a finding that the discovery sought is proportional to the needs of the case.

As to the parties' resources, the Court finds the same to be roughly equivalent. There are corporate entities on both sides of this case and while there are also individuals, the amount of cooperation between those individuals and Alliant and its counsel suggest that the individuals are not at any disadvantage in this matter. Given this equality, the respective resources of the Parties weighs in favor of a finding that the discovery sought is proportional to the needs of the case.

11

As to the parties' relative access to relevant information, AP has no access to the individual communications between Jones, Adamic, Brewer, Tucker, and Evans except to receive those communications from those individuals. Thus, this factor weighs in favor of a finding that the discovery sought is proportional to the needs of the case because AP has no other source for the discovery sought.

It is the final factor the Parties spend the most time debating in their filings: whether the burden or expense of the proposed discovery outweighs its likely benefit. The Parties highly dispute the application of this factor, which ultimately the Court concludes also weighs in favor of a finding that the discovery sought is proportional to the needs of the case because the burden or expense of the proposed discovery does not outweigh its likely benefit.

The Alliant Parties argued that the extreme amount of information already produced in discovery weighs against a finding that any further discovery should be permitted, citing to the fact that they had already produced over 40,000 pages in initial responses and 25,000 additional documents in supplementation. (DN 111, at PageID # 1783.) They emphasized that AP had served more than thirty-six third party subpoenas and been granted leave to take fifteen depositions. (*Id.*) But the Court finds these contextless citations to numbers to be less than dispositive of these issues. Mere citations to the number of pages or documents produced are often meaningless in this type of dispute because how much a party has produced does nothing to illuminate for the court how much a party should have produced. Given the types of claims at issue in this case and the sophistication of the businesses of the entities involved, the Court is unsurprised that the document productions in this case have been voluminous. Thus, the Alliant Parties' argument is nondispositive of the ultimate result. The Alliant Parties have offered nothing specific to the Court

to substantiate that producing the requested communications would require a similarly large production to those already made in the case.

The Alliant Parties also argued that AP had engaged in nothing more than mere speculation both that additional responsive documents exist and that the Alliant Parties could not be trusted to produce relevant communications. As to the former, AP's motion is based on more than speculation. AP produced a spreadsheet of text messages between the relevant individuals that it created based on phone logs and provided to the Alliant Parties, who refused to produce the communications therein. (DNs 114-2, 114-3.) And the Alliant Parties' own discovery responses and response to the motion to compel demonstrate that communications were withheld, including those that were "purely personal." (DN 111, at PageID # 1789 n.4.) The Court finds the arbitrary terms "purely personal" to be less then persuasive of whether the withheld messages are actually responsive and relevant to the claims and defenses in this action as a message could be both personal and relevant. The Alliant Parties did not demonstrate or even attempt to explain that Jones, Adamic, Brewer, Tucker, and Evans were friends or family or otherwise had any reason to have extensive—or even any—personal communications outside of work, nor was there any argument or demonstration that there were serious privacy issues to be raised by disclosure of even their personal communications. Thus, the Court finds any privacy concerns as to Jones, Adamic, Brewer, Tucker, and Evans at best hypothetical at this point.

This leaves the core issue of dispute between the Parties: whether AP is entitled to what it requested—all communications between the specified individuals—or something more limited. Here, the Court finds that AP is entitled to see all communications. The authorities cited by the Alliant Parties in their response to support the idea that it is inappropriate to grant a motion to compel when a party complains its opponent has documents its opponent denies having are all

13

distinguishable from this case. (*Id.* at 1792.) This is not a case where AP is speculating that additional documents exist. Additional documents do exist based on the Alliant Parties' own representations; it is merely the relevance and importance of those documents that is in dispute. In support of its need to view all communications, AP proffered two reasons. First, AP proffered citations to Alliant and its counsel's conduct in other cases that it claimed support a demonstrated history of discovery misconduct. While the Court understands why this concerns AP, this Court will not rely on conduct that occurred outside of this case to determine the Parties' discovery obligations. Second, and of a more concerning nature, AP cited to potential misconduct by Jones during this case. As those issues are the subject of a separate motion for spoliation, the Court makes no determination at this time as whether such misconduct occurred; but because AP has done more than make unsubstantiated allegations, the Court nonetheless finds it appropriate to rely on those allegations at this stage. In particular, AP submitted an affidavit from an individual who conducted a forensic examination of Jones's cell phone that states that based on the affiant's analysis, Jones mass deleted text messages on his phone with timestamps predating July 11, 2024, and has also deleted text messages after that date. (DN 114-1.) Given that Jones initially filed this suit on July 1, 2024, and AP's counterclaim and third-party complaint were filed on July 9, 2024 (DNs 1-2, 4), this proffered evidence is extremely concerning and does provide a basis for AP to make a request that otherwise the Court would have considered overbroad. If Jones deleted text messages with the specified individuals, the only way to recover them would be from the individual with whom he communicated. And that specter of misconduct likewise haunts the responses of the other Alliant Parties given the relationship between them. On balance, the Court finds that discovery of all communications between Jones, Adamic, Brewer, Evans, and Tucker is appropriate in this case. The Court is persuaded by AP's position that this request is unlikely to

14

generate a large amount of additional discovery given the limited time frame and number of individuals involved. For all these reasons, the Court finds that the benefit of the proposed discovery outweighs the burden on the opposing parties. Therefore, the requested discovery is proportional to the needs of this case and will be permitted with one exception. The terms of the requests themselves are not limited to request to *non-privileged* communications as required by Rule 26. The Court will therefore allow the Alliant Parties to withhold privileged communications identified on a privilege log in accordance with the Rules. And of course, to the extent the Parties have negotiated a confidentiality agreement, the Court takes no position on the application of the same to the communications at issue.

### III. CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that AP's Motion to Compel (DN 110) is **GRANTED IN PART and DENIED IN PART** as set forth herein. Specifically, the motion is granted in so far as Alliant Insurance Services, Inc.; Alan Jones; Desiree Brewer; and Mitchell Adamic are ordered to produce all non-privileged communications in their possession, custody, or control between any combination of Jones, Adamic, Brewer, Tucker or Evans since January 1, 2024. This production shall be made no later than **February 21, 2025**. To the extent privileged communications are withheld, the same shall be identified on a privilege log.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

January 31, 2025